Wilson *v.* Gaines.

James H. Wilson, Receiver, *v.* James L. Gaines, Comptroller,

1. TAXATION. *Exemption. Corporation. Railroad. Charters.* The word "exemption" is not comprehended within the words "rights and privileges," as applied to a corporation claiming a right of exemption from taxation by virtue of a section of its charter, conferring upon it the *rights and privileges* of a like coporation, which latter corporation was by express terms of the charter exempt from taxation.

Cases cited: Mississippi & Tennessee Railroad *v.* The State, at Jackson; East Tennessee, Virginia & Georgia Railroad *v.* Hamblin county, at Knoxville; Constitution of the State, sec. 7, of art. 11; also, sec. 8, art. 11; Act of Legislature, December 11, 1845, sec. 38.

2. EXEMPTIONS FROM TAXATION. *Public policy.* Exemptions from taxation are contrary to public policy, and can only be allowed when granted in clear and unmistakable terms. If the language in which they are claimed to be granted leaves it doubtful, the benefit of the doubt must be given to the State, the life of which is taxes.

3. EXEMPTION FROM TAXATION NOT ASSIGNABLE. An exemption from taxation is personal to the corporation or individual possessing it, and is not assignable.

Case reviewed: Knoxville & Ohio Railroad Company *v.* Hicks, th volume.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court. W. F. COOPER, Chancellor.

DEMOSS & MALONE for Wilson.

ATTORNEY-GENERAL for Gaines.

TURNEY, J., delivered the opinion of the court.

On the 11th of December, 1845, the Legislature chartered the Nashville and Chattanooga Railroad Company for the purpose of building a road from Nashville to Chattanooga. By sec. 38 of that charter, capital stock was forever exempted from taxation, and the road with its fixtures and appurtenances, including work shops, warehouses and vehicles for transportation, were exempted from taxation for twenty years from the completion of the road.

In 1852, the Legislature chartered the Edgefield and Kentucky Railroad, for the purpose of building a road from Nashville to the Kentucky State line. The road was completed in 1859. The road was run by the company, or a receiver for the State, until sold under the decrees of the chancery court, and has since been run by the purchasers, or their assigns, or a receiver.

Under sec. 6 of the act of February, 1852, the Edgefield and Kentucky Railroad Company was invested with all the powers and rights and privileges of the Nashville and Chattanooga Railroad Company, conferred by the act of December, 1845.

By sec. 2 of an act of assembly passed December 15, 1855, the charter of the Edgfield and Kentucky Railroad Company was so amended as to give it all the rights and privileges that were conferred on the Nashville and Southern railroad by an act of the General Assembly passed January, 1852. The Nashville and Southern railroad, by the last act referred to, was granted all the rights and powers and privileges, and subjected to all the liabilities and restrictions prescribed

by the charter of the Nashville and Chattanooga Railroad Company, and in the various amendments thereto, except as in the act further provided. In the act it is further provided by its 7th section, that the 13th section of the act of 1845 shall not be a part of this act. The 13th section referred to, provides that no other road shall be built, constructed or cut, nearer than twenty miles of the chartered one, etc.

The State extended it aid, under the general improvement laws, to the Edgefield and Kentucky road, and its sale was under a bill to foreclose the State's statutory lien upon the road, equipments, stock, etc. The road, its franchises, property rights, privileges etc., were sold, and were purchased by the county of Davidson and others, who subsequently sold it to the American Contract Company, which subsequently sold it to parties who put it into consolidation with various other roads, etc.,

On the 20th of March, 1875, the Legislature passed an act declaring the mode and manner of valuing the property of a railroad company for taxation, directing the assessments, providing proceeding in case of failure, etc. This latter act was amended in March, 1877.

The bill insists that the exemption is a privilege, that such privilege is a contract; that the exemption would continue, although the road should be consolidated with other roads; that the acts of 1875 and 1877 impair the contract between the State and the company, and prays that the comptroller be made a party defendant, that he be enjoined from collecting

the taxes or issuing a distress warrant, from certifying to the clerks of county courts, etc.

The first question, whether privilege is exemption from taxation, has been before us twice: The first time in the case of the *Miss. & Tenn. Railroad* v. *The State*, at Jackson, and then again in the case of the *E. T., Va. & Ga. Railroad* v. *Hamblin County,* in both of which we held, after full argument, that the term privilege did not include exemption, nor was it so intended by the Legislature in its use in any or either of the several acts referred to. However comprehensive a meaning may have been given to the term "privilege" by the courts of other States, or by Lexicographers, we are constrained to use it in the restricted sense and meaning given to it by our own laws and the Constitution of the State.

That it was not intended or understood to be sufficiently broad by the framers of the Constitution of 1834 to embrace exemptions, is made clear and indisputable by reference to sec. 7 of article 9 of that instrument by which it is ordained: " The Legislature shall have no power to pass any law granting to any individual or individuals, rights, privileges, immunities. or exemptions, other than such as may," etc. A Legislature acting under this Constitution for its powers, and as defining its duties, must be conclusively presumed to have used a word or term of the Constitution in the sense and with the meaning given it by that Constitution.

The acts in review in this case, were passed while the Constitution of 1834 was in force and the

the supreme law of the State, the chart defining the powers and jurisdictions of the several departments of the government, and under which they were organized and moved and acted, and conformity to which determined the legality of their acts.

It cannot be pretended or presumed that the able men, comprising the convention which framed the Constitution, used language or terms without a purpose or meaning, or double terms of the same meaning without more.

We are satisfied the term " privileges," as employed in that Constitution, in the connection in which it appears, was used in its restrictive sense. That the interpretation we have given is the correct one, is made the more manifest by the use of the identically same language in sec. 8 of art. 11 of the Constiution. of 1870, which shows the convention of that year understood the terms " privileges " and " exemptions " to perform distinct offices, and to have been employed with different meanings, the latter more comperhensive.

The act of the 11th of December, 1845, sec. 38, uses the word exempt. If the Legislature, in the acts incorporating the Edgefield and Kentucky road, had intended to have given it immunity from taxation, the natural way of so doing would have been in the use of the term exemption as suggested by the controlling word " exempt " in the section referred to. The use in the statutes of two only of the words of the Constitution, i. e., " rights " and " privileges," and the omission to employ either of the other two following in immediate succession, viz: "immunities " and

" exemptions," either of which would have made clear the construction claimed by complainant, evidence a purposed intention on the part of the Legislature not to grant the benefit claimed by the bill, but, on the contrary, to reserve it for the advantage of the State.

Exemptions from taxation are contrary to public policy, and can only be granted in clear and unmistakable terms—they are not creatures of intendment or presumption. If the language in which they are claimed be granted leaves it doubtful, the benefit of the doubt must be given to the State, the life of which is taxes. In the case of *Humphreys* v. *Pigues,* 16 Wal., to which we are referred as authority against our conclusion in the former opinions of this court, the meaning of the term " privilege" is not discussed. A reading of the report shows clearly that it was in no way brought to the attention of the court, and was in fact not involved, so that while some of the reasoning, of the judge delivering the opinion, may seem to militate against the conclusion to which we have arrived, we must remember the discussion was of an entirely different question, and to sustain an entirely distinct conclusion, in no manner involving the meaning of the term " privilege."

The case of the *Knoxville & Ohio R. R. Co.* v. *Hicks* was predicated of the decrees of the chancery court at Nashville, this court holding that the decrees of the chancellor in that case were in pursuance of the act of the Legislature, and equivalent to a Legislative grant.

One other question remains: Would the present owners of the road or the complainants receiver be entitled to the exemption claimed, had it been expressly granted to the original company, or the term "privileges" as comprehensive as claimed? We think not. We have already mentioned the several sales and transfers of the road, its property, etc. For our determination of this question, we employ the language of Mr. Justice Fields, in *Morgan* v. *Louisiana*, 3 Otto.

Intendments will not be indulged to enlarge the operation of a clause restraining the exercise of a sovereign attributs of a State. As has often been said by this court, the whole community is intrusted in retaining the power undiminished, and has a right to insist that its abandonment shall not be presumed in any case where the deliberate purpose of the State to abandon it does not appear. Here is the capital stock of the company, and its works, fixtures, workshops, warehouses, vehicles of transportation, and appurtenances, which the statute declares shall be exempt, evidently meaning that it is the property of the company so long as it remains such, that the exemption shall apply."

The franchise of a railroad corporation are rights or privileges, which are essential to the operations of the corporation, and without which its road and works would be of little value, such as the franchises to run cars, to take tolls, to appropriate earth and ground for the bed of its road, or water for its engines, and the like.

They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company; the latter is personal, and incapable of transfer without express statutory direction."

Dismiss the bill as decreed by the chancellor.